# PECHMAN LAW GROUP PLLC
### ATTORNEYS AT LAW

**488 MADISON AVENUE**
**NEW YORK, NEW YORK 10022**
**(212) 583-9500**
**WWW.PECHMANLAW.COM**

November 25, 2020

**VIA ECF**

Honorable Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re: *Dutan v. Vestea Food Corp. et al.*
          20 Civ. 1855 (BMC)

Dear Judge Cogan:

    We represent Plaintiff Segundo Carlos Dutan in the above-captioned matter, and submit this letter-motion jointly with counsel for Defendants Vestea Food Corp. d/b/a Amore Pizza, Salvatore Laurita, and Salvatore Viola (collectively "Defendants") to request that the Court approve the attached negotiated Settlement Agreement and Release (the "Agreement") (Ex. 1 and 2)[1] pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015) as a fair and reasonable compromise of this FLSA action.

## FACTUAL AND PROCEDURAL HISTORY

    On April 20, 2020, Plaintiff Segundo Carlos Dutan ("Plaintiff"), through his counsel, Pechman Law Group PLLC ("PLG"), commenced this Action against Defendants by filing a complaint (the "Complaint") in the United States District Court, Eastern District of New York (the "Court"), Docket No. 1:20-cv-01855 – BMC (the "Action").

    Through his Complaint, Plaintiff—a former kitchen worker and cook at Amore Pizza—alleged that throughout his employment, he was paid at "straight-time" rates that failed to compensate him for hours worked in excess of forty per workweek at a rate of 1.5 times his regular hourly rate, as required by the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). Plaintiff also alleged that: (1) he was not provided with spread-of-hours pay on days when he worked shifts in excess of ten hours as required by the NYLL; (2) was not provided with wage notices when his wage rate changed; and (3) was not provided with accurate wage statements with each payment of wages as required by the NYLL's Wage Theft Prevention Act ("WTPA"). Plaintiff sought to recover his unpaid overtime and spread-of-hours wages, liquidated damages,

---

[1] The signature page executed by Defendants is separately attached as Exhibit 2.

statutory damages based on the alleged WTPA violations, pre- and post-judgment interest, and attorneys' fees and costs.

Following an initial conference on June 3, 2020, the Court ordered Plaintiff to request an entry of default judgment by June 4, 2020 and to move for default judgment within fourteen days of the Clerk of Court's entry of default. Plaintiff filed a request for certificate of default and corresponding declaration in support on June 4, 2020. (ECF No. 11, 11-1). Defendants thereafter retained an attorney and entered a notice of appearance on June 5, 2020 (ECF No. 12), and the Parties filed a stipulation on June 10, 2020 withdrawing Plaintiff's request for a certificate of default and extending Defendants' time to file an Answer to Plaintiff's Complaint (ECF No. 13).

Defendants filed their Answer on June 24, 2020, denying the allegations made in Plaintiff's Complaint and asserting certain defenses. (ECF No. 14). Following an initial conference and adoption of the Case Management Plan (ECF No. 19), the Parties exchanged initial disclosures, requests for production of documents, and interrogatories. Plaintiff responded to Defendants' requests for production of documents and interrogatories. Following an indication from Defendants' counsel that Defendants' ability to respond to Plaintiff's discovery requests was impeded by a medical emergency suffered by Defendant Salvatore Laurita, Defendants requested an extension of time to complete discovery, to which Plaintiff consented (ECF No. 21). The Parties also agreed to engage in mediation in an attempt to resolve their dispute, and requested a referral to mediation from the Court (ECF No. 22), which was subsequently granted.

The Parties participated in a mediation with EDNY mediator Patrick McKenna, Esq., on November 11, 2020. Defendants continued to deny Plaintiff's allegations, contending that Plaintiff was appropriately compensated for all hours worked and that his Complaint exaggerated weekly hours worked. Following a three-hour mediation session, the Parties reached an agreement to resolve Plaintiff's claims for the total sum of $33,000.00. The Parties now jointly request that the Court approve their Agreement as a fair and reasonable resolution of a bona fide FLSA dispute.

## THE SETTLEMENT AGREEMENT IS FAIR AND REASONABLE

*Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), provides that stipulated dismissals settling FLSA claims with prejudice require the approval of a United States District Court or the Department of Labor. 796 F.3d at 200. In considering the fairness of a proposed settlement, "[t]ypically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Siler v. Landry's Seafood House - N. Carolina, Inc.*, No. 13-CV-587 RLE, 2014 WL 2945796, at *7 (S.D.N.Y. June 30, 2014) (citation omitted). Where "the proposed FLSA settlement reflects a reasonable compromise over contested issues, it should be approved." *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 305 (E.D.N.Y. 2015) (quoting *Siler*, 2014 WL 2945796 at *7). Courts in the Second Circuit consider the totality of the circumstances, including the following factors, when determining whether a proposed settlement is fair and reasonable:

Hon. Brian M. Cogan
November 25, 2020
Page 3

> (1) the plaintiff's range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quotations omitted). The Parties believe the settlement here is fair and reasonable under these factors.

### I. The Parties' Agreement is Fair and Avoids Litigation Risks

The Parties' Agreement requires Defendants to pay a total sum of $33,000.00 to resolve this Action without any admission of liability. (Ex. 1 at ¶ 1). After deduction of attorneys' fees and costs, Plaintiff will receive $21,327.33. (*Id.* at ¶ 1(a)).

Plaintiff's counsel calculated his damages based on Plaintiff's recollection of hours worked and pay received. Specifically, Plaintiff's damages were calculated based on Plaintiff's claim that he regularly worked five days per week for a total of approximately 52 hours per week during the period from 2014 to May 2018, during which time he was paid at a straight time rate of $12.50 per hour, including hours worked over forty per workweek. Plaintiff also worked three shifts per week in excess of ten hours during this period, but was not paid required spread-of-hours pay on these days. From May 2018 to the end of his employment on March 14, 2020, Plaintiff regularly worked one to three days per week, totaling approximately ten to thirty-five hours per week, and was paid $15.00 per hour. He regularly worked one shift per week in excess of ten hours during this period, but was not provided with spread-of-hours pay for these shifts. Based on these allegations, Plaintiff's counsel calculated Plaintiff's wage damages as $22,908.00. Plaintiff's total damages also included an equal amount ($22,908.00) in liquidated damages under the NYLL, $10,000 in statutory damages based on the alleged WTPA violations, and pre-judgment interest. As of the November 11, 2020 mediation date, Plaintiff's counsel calculated his total damages exclusive of attorneys' fees under a best-case scenario as $63,211.25.

Throughout the negotiation process, Defendants strenuously contested Plaintiff's allegations with respect to overtime hours worked in addition to amounts actually received by Plaintiff as well as bonuses and paid vacation. Defendants also raised an inability to pay argument, averring that the effects of the Covid-19 pandemic on Defendants' business have impacted Defendants' ability to make a settlement payment.

Under the Agreement reached by the Parties, Plaintiff will receive approximately 93.1% of his unpaid wages, as calculated by Plaintiff's counsel *based on Plaintiff's own recollections*. Importantly, the Parties' Agreement permits Plaintiff to avoid the risks attendant with continued litigation. In the absence of payroll records, this case would rest largely on credibility determinations based on testimony from Plaintiff and

3

Defendants. If Defendants were able to successfully defend against Plaintiff's allegations in a continued litigation, Plaintiff risks a total loss of recovery. Moreover, absent their Agreement, the Parties would have to proceed through costly depositions, draining resources that Defendants have agreed to put towards the resolution of the Action. Under the Parties' Agreement, Defendants will pay the settlement amount as a lump sum by February 1, 2021 or following the Court's approval of the Agreement, whichever comes later. Absent the Agreement, Plaintiff would not see recovery in this case until after depositions and a trial, if ever. Plaintiff is further protected by the requirement in the Parties' Agreement that individual defendants Salvatore Laurita and Salvatore Viola execute Confessions of Judgment, which Plaintiff may file in the event of a default on payment by Defendants.

In light of the above, the Parties respectfully request that the Court find that their Agreement is a fair and reasonable compromise of a bona fide FLSA dispute.

## II. The Allocation of Attorneys' Fees and Costs is Reasonable

Plaintiff's counsel has spent significant time investigating the factual and legal issues raised in this Action, preparing Plaintiff's Complaint, engaging in outreach with Defendants' counsel, filing a request for a certificate of default, preparing and responding to discovery requests, and preparing for and engaging in mediation efforts. Plaintiff's counsel has used its experience in litigating wage-and-hour disputes to provide a satisfactory result for Plaintiff. In accordance with Plaintiff's retainer agreement, attorneys' fees in this case are one-third of the total recovery after reimbursement of costs, totaling $10,663.67. Costs in this Action total $1,009.00, and include: (1) the $400.00 filing fee; (2) $309.00 for service of the Complaint and summonses on Defendants; and (3) the $300.00 mediation fee.[2]

The contingency fee in this case should be approved because it is the fee Plaintiffs agreed upon in their retainer agreements. *In re Lawrence*, 24 N.Y.3d 320, 339 (2014) ("Absent incompetence, deception or overreaching, contingent fee agreements that are not void at the time of inception should be enforced as written."). Moreover, the one-third contingency is the fee which courts consider to be presumptively valid in FLSA cases. *See, e.g.*, *Oxley v. Excellent Home Care Servs., LLC*, No. 18-CV-2374 (RJD)(CLP), 2020 WL 589581, at *3 (E.D.N.Y. Jan. 8, 2020), *report and recommendation adopted*, 2020 WL 401772 (E.D.N.Y. Jan. 23, 2020) ("Settlements of a one-third percentage are typically found reasonable in this Circuit"); *Angamarca v. Hud-Moe LLC*, No. 18-CV-1334 (RA), 2018 WL 6618412, at *1 (S.D.N.Y. Dec. 17, 2018) ("A contingency fee award is presumptively valid where the proposed fee amount is exactly one-third of the net settlement amount[.]") (internal quotation and quotation marks omitted); *Marquez v. Roberto's Rest. Corp.*, No. 16-CV-2304 (HBP), 2017 WL 5468760, at *3 (S.D.N.Y. Nov. 13, 2017) ("Contingency fees of one-third in FLSA cases are routinely approved in this Circuit."); *Ezpino v. CDL Underground Specialists, Inc.*, No. 14 Civ. 3173 (DRH) (SIL), 2017 WL 3037483, at *3 (E.D.N.Y. June 30, 2017) ("A one-third contingency fee is a commonly accepted fee in this

---

[2] A copy of PLG's contemporaneous expense and billing records are attached as Exhibit 3.

Hon. Brian M. Cogan
November 25, 2020
Page 5

Circuit.") (internal citations omitted). Moreover, it bears noting that PLG's lodestar currently exceeds $20,000.00 (*See* Ex. 3). As such, the contingency fee in this case is fair and reasonable, particularly because it is less than the lodestar and was agreed to by Plaintiffs.

### III. The Agreement Satisfies All Other Factors Considered for Approval

The terms of the Agreement are consistent with *Cheeks*. The Agreement was reached following arm's-length negotiations between capable counsel and with the aid of a court-annexed mediator. Plaintiff's release is limited to wage-and-hour claims, and the Agreement does not contain a confidentiality provision. While the Agreement does contain a mutual non-disparagement provision (Ex 1 at ¶ 12), the provision is appropriately tailored to restrict the Parties' only from making false and defamatory communications about the other side and to permit Plaintiff to make truthful statements about his experiences litigation this Action and about the Agreement, *id. See, e.g., Mobley v. Five Gems Mgmt. Corp.*, No. 17-CV-9448 (KPF), 2018 WL 1684343, at *5 (S.D.N.Y. Apr. 6, 2018) (approving non-disparagement clause that "only restrain[ed] the parties from making false or defamatory statements that disparage the other side, and [] expressly permit[ted] Plaintiff to make statements relating to her 'experience in litigating [this] wage-and-hour case[.]'"). Further, the Agreement contains provisions that help to ensure that Defendants pay the Settlement Amount, including a requirement that the individual defendants execute Confessions of Judgment and a request that the Court retain jurisdiction over this Action for purposes of enforcing the Agreement's terms. Finally, the Parties note that Plaintiff no longer works for Defendants.

### CONCLUSION

The Parties agree that the Agreement is fair and reasonable and should be approved by the Court. This settlement will enable the Parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses in further litigation. Continuing through pending discovery and trial would consume significant amounts of time and resources and demand substantial judicial resources. A trial would be costly for all Parties and could lead to the depletion of the resources used to resolve this matter. A proposed stipulation and order of dismissal executed by the Parties is attached as Exhibit 4.

We thank the Court for its time and consideration of this matter.

Respectfully submitted,

*s/ Galen C. Baynes*

Galen C. Baynes

cc: Counsel of Record (via ECF)

Exhibits